# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 05-1625 & 05-1899

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

LANCE PISMAN,

*Defendant-Appellant,*
*Cross-Appellee.*

———————

Appeals from the United States District Court
for the Central District of Illinois.
No. 04 CR 10028—**Joe Billy McDade**, *Judge.*

———————

ARGUED SEPTEMBER 26, 2005—DECIDED APRIL 7, 2006

———————

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* In March 2004, a federal grand jury returned an indictment against Lance Pisman and Jacob Wilkerson. Counts 1 and 2 charged both men with conspiracy to travel for sexual conduct with a minor in violation of 18 U.S.C. §§ 2423(b) and (e), and interstate travel for sexual conduct with a minor in violation of 18 U.S.C. § 2422(b). A third count charged Wilkerson with the use of interstate commerce to entice a minor to engage in illicit sex, in violation of 18 U.S.C. § 2422(b).

Wilkerson subsequently pled guilty to Counts 1 and 2, and on June 16, 2004, the grand jury returned a superceding indictment mirroring the original two counts but adding Pisman as a defendant to Count 3.

At trial, Wilkerson testified against Pisman, and the government introduced into evidence 25 internet chats between Pisman and Wilkerson. That testimony and the internet communications established that Pisman and Wilkerson had a sexual relationship, and that the two made plans for Pisman to travel from his residence in Iowa to Illinois in order to meet with Wilkerson and others to engage in sex. Wilkerson was communicating with the other persons who would meet with them, and the internet correspondence and testimony also provided evidence that Pisman was aware that one or more of those persons were teenage boys who were minors. Because Wilkerson, rather than Pisman, was the one who made contact with the minors, Pisman's liability under count 3 was premised upon the existence of a conspiracy with Wilkerson as charged in Count 1. Under the doctrine set forth in *Pinkerton v. United States*, 328 U.S. 640 (1946), a defendant may be found guilty of a substantive offense committed by a co-conspirator if the offense was committed in furtherance of the conspiracy at the time the defendant was a member of the conspiracy, even if the defendant neither participated in nor had knowledge of the substantive offense. Relying on that theory, the government argued that Pisman and Wilkerson were members of a conspiracy in Count 1 to travel for sexual conduct with a minor, and that Wilkerson as a member of that conspiracy, used interstate commerce (the internet) to entice a minor to engage in illicit sex. The court accordingly issued the *Pinkerton* instruction with respect to Count 3, which stated that:

> A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a

> foreseeable consequence of the conspiracy. Therefore, if you find the defendant guilty of the conspiracy charged in Count I and if you find beyond a reasonable doubt that while he was a member of the conspiracy, his fellow conspirator committed the offense in Count III in furtherance of and as a foreseeable consequence of that conspiracy, then you should find him guilty of Count III.

Although the government's argument essentially tied liability under Count 3 to guilt on the conspiracy charge of Count 1, the jury had other ideas. The jury acquitted Pisman of Counts 1 and 2, and found him guilty of Count 3. Pisman now argues that the conspiracy acquittal forecloses a conviction on Count 3 under the *Pinkerton* doctrine, and that the district court erred in denying his motion for judgment of acquittal on that count.

Despite Pisman's extensive efforts to characterize it otherwise, this situation is one of inconsistent verdicts, and the Supreme Court has made clear that the mere inconsistency is not a basis for judgment of acquittal. In *United States v. Powell*, 469 U.S. 57 (1984), the Court addressed a situation analogous to the one presented here. In that case, a jury acquitted the defendant of conspiracy to possess cocaine and of possession of cocaine, but nevertheless found her guilty of using the telephone to facilitate those offenses. The appellate court reversed the conviction, holding that the acquittal on the predicate felony necessarily indicated that there was insufficient evidence to support the telephone facilitation conviction and mandated acquittal on that count as well. *Id.* at 61. The Court rejected that reasoning and reiterated its established ruling that the inconsistency in jury verdicts is not a basis for reversal except in the situation in which two guilty verdicts cannot coexist. *Id.* at 68-69. In reaching that conclusion, the Court reiterated that each count in an indictment is regarded as if it were a separate indictment. *Id.* at 62. Quoting a prior opinion, the Court stated that where a jury returns an

inconsistent verdict, " '[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than the assumption of a power which they had no right to exercise, but which they were disposed through lenity.' " *Id.* at 63, *quoting Dunn v. United States*, 284 U.S. 390, 393 (1932). Thus, although the inconsistency in the verdicts certainly reflected an " 'error' in the sense that the jury has not followed the court's instruction . . . it is unclear whose ox has been gored." *Id.* at 65. A number of factors weighed against allowing review of verdicts based solely on inconsistency, including the difficulty in determining in whose favor the "error" was made, the inability of the government to invoke review of the acquittal, and the reluctance to inquire into the inner workings of the jury. *Id.* at 68-69. Moreover, a defendant was protected from jury irrationality as to an individual count by the independent review of the sufficiency of the evidence, which would ensure that the evidence supported a rational determination of guilt beyond a reasonable doubt as to that count. *Id.* at 67.

In this case, Pisman does not contest that the government presented sufficient evidence to support a determination of guilt beyond a reasonable doubt as to Count 3. The only contention is that the jury could not find that guilt without first determining that he was guilty of the predicate offense of Count 1, and therefore that the finding of guilt cannot stand. The *Powell* Court, however, explicitly rejected the argument that an exception should be made to the inconsistent verdict rule where the jury acquits a defendant of a predicate felony but convicts on the compound felony. The Court noted that the argument for such an exception misunderstands the nature of the inconsistent verdict problem, and suffers from the same defect in that it as-

sumes that the acquittal was the right verdict—the one the jury "'really meant.'" *Id.* at 68. Accordingly, the Court rejected the invitation to create an exception to the inconsistent verdict rule.

We similarly rejected such an argument recently in *United States v. McGee*, 408 F.3d 966 (7th Cir. 2005). In that case, a defendant, Harold McKinzie, argued that his conviction was improper because the jury acquitted him of the underlying conspiracy charge but convicted him of the compound offense of use of a telephone to facilitate the conspiracy. We held that his argument was precluded by *Powell*, noting that reversal as a matter of course in such situations was improper, especially considering that the acquittal may have been the result of juror mistake, compromise or lenity. *Id.* at 985. *See also United States v. Flaschberger*, 408 F.3d 941, 943 (7th Cir. 2005) (holding that inconsistent verdicts do not entitle the defendant to relief, and noting that an inconsistent acquittal may demonstrate mercy or confusion rather than innocence); *United States v. Dykes*, 406 F.3d 717 (D.C. Cir. 2005). The nature of this case as one involving the *Pinkerton* co-conspirator theory does not differentiate it from those cases, as Pisman's theory ultimately rests on the same assumption that the acquittal rather than the conviction is the "right" jury verdict. Pisman's situation is factually indistinguishable from the cases above in which a jury acquitted on the predicate offense and convicted on the compound offense that necessarily incorporated that predicate offense. *See United States v. Gallo-Chamorro*, 48 F.3d 502 (11th Cir. 1995) (noting that inconsistent verdicts are not a ground for reversal in a case in which the jury convicted the defendant of importation under the *Pinkerton* co-conspirator theory but acquitted him of the conspiracy count.) Accordingly, the district court properly denied Pisman's motion for judgment of acquittal.

That does not end this appeal, however, because the government cross-appealed as to the sentence imposed by

the judge in this case. The Guidelines range for Pisman's sentence was 108-135 months. Of course, the district court has discretion to sentence above or beyond that range, but in determining the appropriate sentence the district court must take into consideration the Guidelines recommendation as well as the sentencing factors in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to: reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, provide the defendant with needed educational or vocational training, and avoid unwarranted sentence disparities among defendants. The issue in this case concerns the last factor, the need to avoid unwarranted sentence disparities among defendants.

The district court in this case determined that a sentence of 60 months was appropriate, which was the statutory minimum but was 48 months below the Guidelines range. In reaching that conclusion, the court expressed its concerns that Pisman's sentence be reconciled with the sentence provided to his co-defendant Wilkerson. The trial evidence indicated that Wilkerson was the primary actor in the offense, and the one that the public at least would view as the more culpable. Wilkerson pled guilty to the offenses, however, and cooperated with the government in its prosecution of Pisman. As a result of the cooperation, Wilkerson was sentenced to only 68 months imprisonment.

The district court noted that Pisman's predatory activity was not nearly as substantial as Wilkerson's, and attempted to fashion a sentence that reflected that difference. Accordingly, the court sentenced Pisman to 60 months. The district court made clear that the 60-month sentence was directly related to the perceived disparity with Wilkerson's sentence, stating:

> [H]ad Jake Wilkerson's sentence been more, the defendant's sentence would be more, but those who knew of both Mr. Wilkerson's and Mr. Pisman's conduct probably would not understand if Mr. Pisman got a higher sentence than Jake Wilkerson, and they probably would not appreciate the complexities of the guidelines that knock off something for acceptance of responsibility.

Sent. Tr. at 97. That comparison of co-defendants, however, is not a proper application of the § 3553(a) mandate that a court minimize unwarranted disparities in sentences. First, the lower sentence for Wilkerson was attributable to his decision to plead guilty to the offense and his cooperation with the government, which is a legally appropriate consideration. The corresponding reduction in his sentence as compared to a non-cooperating defendant is not an "unwarranted" disparity. *United States v. Boscarino*, 437 F.3d 634, 637-38 (7th Cir. 2006). Moreover, the § 3553(a) concern with sentence disparity is not one that focuses on differences among defendants in an individual case, but rather is concerned with unjustified difference across judges or districts. *Id.* at 638. In fact, the focus on the differences among defendants in an individual case in which one defendant cooperates could actually increase sentence disparity, because the resulting lower sentence for the offense to redress that disparity will be out of sync with sentences in similar cases nationwide in which there were not multiple defendants or in which one did not cooperate. *Id.* As we noted in *Boscarino*, it makes no sense that one culprit should receive a lower sentence than an otherwise-similar offender, "just because the first is 'lucky' enough to have a confederate turn state's evidence." *Id.* The district court's approach does nothing to eliminate unwarranted disparity in sentences, and therefore is an improper application of the § 3553(a) factor. That is not to say that the district court could not impose the 60-month sentence; we express no opinion on that. Our holding is simply that

the district court's sentence was based in part on an improper application of one factor of § 3553(a), and accordingly we vacate the sentence and remand for resentencing. The conviction is AFFIRMED, the sentence is VACATED, and the case is REMANDED for resentencing.

A true Copy:

   Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—4-7-06