UNITED STATES of America, Appellee,

v.

Arnett E. PHIPPS, Defendant–Appellant.

No. 1271, Docket 93–1715.

United States Court of Appeals,
Second Circuit.

Argued June 27, 1994.

Decided July 6, 1994.

David P. Bloch, Sp. Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty. for the S.D. of New York, Gaines H. Cleveland, John W. Auchincloss II, Asst. U.S. Attys., on the brief), for appellee.

Joseph H. Gibson, Washington, DC (K. Chris Todd, Johnson & Gibbs, on the brief), for defendant-appellant.

Before MESKILL, KEARSE, and ALTIMARI, Circuit Judges.

PER CURIAM:

Defendant Arnett E. Phipps appeals from a judgment entered in the United States District Court for the Southern District of New York, following his plea of guilty before Thomas P. Griesa, *Chief Judge*, to one count of aiding or assisting in the preparation of fraudulent income tax returns, in violation of 26 U.S.C. § 7206(2) (1988), and one count of filing false income tax returns, in violation of 26 U.S.C. § 7206(1) (1988). Phipps was sentenced principally to 12 months' imprisonment. On appeal, he contends that the district court erred when it found that he was "in the business" of preparing tax returns within the meaning of § 2T1.4(b)(3) of the federal Sentencing Guidelines effective November 1, 1992 ("Guidelines"). We reject his contention and affirm the judgment of conviction.

During the pertinent period, Phipps was employed full-time with American Frozen Foods Company; for a time he also worked 20 hours a week with United Parcel Service. During part of the period in question, Phipps also worked part-time during income tax season at a business in the Bronx, New York, known as P.A.D. Income Tax Service ("PAD"). PAD regularly prepared false income tax returns for individual clients. Phipps prepared some of these returns and was paid on a per-return basis. After Phipps left PAD and moved to Connecticut, he continued to prepare fraudulent tax returns for some of the same clients. He was generally paid $90–200 per return.

Phipps prepared income tax returns in five or six consecutive years, for the tax years 1985 through 1990. During the period in question, he was responsible for preparing some 155 fraudulent returns. The fraudulent returns resulted in losses to the government totaling approximately $88,510.

In the presentence report ("PSR") prepared on Phipps, the Probation Department noted that Phipps had prepared the fraudulent returns "only during the tax season" and that his "primary means of support was apparently from his full-time employment ... and his part-time employment"; the PSR concluded that "[t]herefore, it does not appear that Phipps was in the business of preparing tax returns." The district court rejected this conclusion. Phipps argues that the district court was wrong and the PSR was right. We agree with the district court.

In reviewing a sentencing court's application of the Guidelines, an appellate court must "accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988); *see United States v. Santiago*, 906 F.2d 867, 871 (2d Cir.1990); *United States v. Parker*, 903 F.2d 91, 103 (2d Cir.), *cert. denied*, 498 U.S. 872,

*111 S.Ct. 196, 112 L.Ed.2d 158 (1990).* We will not overturn the court's application of the Guidelines to the facts before it unless we conclude that there has been an abuse of discretion. *See, e.g., United States v. Santiago,* 906 F.2d at 871.

The Guidelines applicable to Phipps's offense provided for a two-step increase in offense level "[i]f the defendant was in the business of preparing or assisting in the preparation of tax returns." 1992 Guidelines § 2T1.4(b)(3). Though the commentary to § 2T1.4 does not define "in the business," it states that "[s]ubsection (b)(3) applies to persons who regularly act as tax preparers or advisers for profit." 1992 Guidelines § 2T1.4 Application Note 3. *See also United States v. Welch,* 19 F.3d 192, 195–96 (5th Cir.1994) (upholding ruling that defendant who showed no other gainful employment and who filed a total of five fraudulent tax returns for four clients over a span of three years was "in the business" of filing tax returns within meaning of § 2T1.4(b)(3)). The commentary further notes that "[a]n increased offense level is specified for tax preparers and advisers because their misconduct poses a greater risk of revenue loss and is more clearly willful." 1992 Guidelines § 2T1.4 Background.

 Section 2T1.4(b)(3) does not, by language or logic, purport to focus only on persons for whom tax-return preparation is a primary business. According to the commentary, the subsection extends to all persons who engage in that activity "regularly." We construe this to mean that the enhancement is not to be applied to a person whose tax-return preparation activity was only occasional or sporadic. *Cf. United States v. St. Cyr,* 977 F.2d 698, 703–04 (1st Cir.1992) (requiring, by analogy to § 2T1.4(b)(3), proof of more than "isolated, casual, or sporadic" conduct for a showing that defendant was "in the business" of dealing in stolen property as used in 1992 Guidelines § 2B1.2(b)(4)(A)); *United States v. Warshawsky,* 20 F.3d 204, 215 (6th Cir.1994) (seven fencing transactions would satisfy *St. Cyr* test); *United States v. Rosa,* 17 F.3d 1531, 1552 (2d Cir.1994) (inference that defendant was "in the business" of receiving stolen goods within meaning of § 2B1.2(b)(4)(A) was reasonable, given evidence that incidents were more than sporadic and that defendant held himself out as a professional). If a defendant is shown to have prepared or assisted in the preparation of tax returns on more than an occasional or sporadic basis, the sentencing court may find that he provided those services regularly; and if it finds that he was paid for those services, the court may properly conclude that he was in the business of preparing tax returns within the meaning of § 2T1.4(b)(3).

In the present case, it is undisputed that Phipps, for a fee of $90–200 per return, prepared numerous income tax returns every year for five or six consecutive years. During that period, he prepared at least 155 fraudulent tax returns. We cannot conclude that the district court erred in finding that Phipps, for profit, prepared income tax returns "regularly."

 The court was not required to interpret "regularly" as synonymous with "year-round," especially when dealing with a business so clearly seasonal as the filing of personal income tax returns. Nor was it required to construe § 2T1.4(b)(3) as reaching only those for whom tax-return preparation is the primary occupation. The guideline was intended, in part, to reach paid preparers whose activities are sufficiently extensive to expose the government to the risk of loss of significant revenues; there can be little doubt that the total losses to the government resulting from fraudulent returns prepared by Phipps, *i.e.,* more than $88,500, were of a magnitude to implicate that concern.

We conclude that the § 2T1.4(b)(3) enhancement may be applied to a person who regularly prepares income tax returns for profit even though he does so only on a seasonal basis and even though that is not his primary business.

## CONCLUSION

We have considered all of Phipps's arguments on this appeal and have found them to be without merit. The judgment of conviction is affirmed.