In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3241

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW SCOTT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 893-1—**John W. Darrah**, *Judge*.

ARGUED AUGUST 3, 2011—DECIDED SEPTEMBER 21, 2011

Before BAUER, MANION, and KANNE, *Circuit Judges*.

PER CURIAM. After a pyramid scheme that he had maintained for nearly a decade came to light, Matthew Scott pleaded guilty to one count of fraud, *see* 18 U.S.C. § 1341, and the district court sentenced him well above the applicable guidelines range to 120 months. On appeal, Scott argues that the district court erroneously applied a 4-level adjustment under U.S.S.G. § 2B1.1(b)(2)(B) for defrauding more than 50 victims; he also argues

that his sentence was substantively unreasonable. We affirm.

From 2000 until 2009, Scott operated a pyramid scheme involving the buying and selling of high-speed commercial printers, and defrauded at least 60 investors of $4,500,000. Scott, the president and sole owner of a printer-repair company called Glesco, Inc., raised $28,000,000 by falsely representing to investors that he purchased such printers and then resold them for a substantial profit. He told investors that the printers were being bought and sold; he also provided investors with false purchase orders, invoices, promissory notes, and other documents that he fabricated.

In a written plea agreement, Scott stipulated that his offense conduct warranted a 4-level adjustment under U.S.S.G. § 2B1.1(b)(2)(B) because "the offense involved more than 50 victims . . . who sustained an actual loss." The presentence report applied the adjustment in calculating a 63 to 78 month guidelines range. Scott did not object to the PSR either in writing or at his sentencing hearing; indeed at the hearing, Scott agreed with the government that a within-range sentence was appropriate.

The district judge heard testimony from several victims of Scott's scheme before concluding that the calculated range did not adequately account for how Scott exploited them, many of whom were friends and neighbors. The judge accepted the PSR's application of § 2B1.1(b)(2)(B), but concluded that the calculated range did not adequately reflect the number and duration of fraudulent

transactions in which Scott "duped" the victims. An above-range sentence was needed, the judge said, to promote respect for the law and deter future schemes of this sort.

On appeal Scott argues that § 2B1.1(b)(2)(B) should not have been applied to him and that he should not have been held accountable for defrauding more than 50 investors. The court, in his view, mistakenly counted investors who had not actually suffered a loss, and at most the government could prove only that there were 45 victims. But Scott waived any such challenge. He did not merely fail to object to the PSR; he stipulated in his written plea agreement to defrauding more than 50 victims, and concurred at his sentencing hearing that the adjustment applied, seeking a within-range sentence because the applicable offense level adequately "considered the number of people victimized . . . ." A defendant who stipulates to facts as part of a written plea agreement also waives challenges to the district court's reliance on those facts. *See United States v. Siegler*, 272 F.3d 975, 978 (7th Cir. 2001); *United States v. Newman*, 148 F.3d 871, 878 (7th Cir. 1998); *see also United States v. Serrano-Beauvaix*, 400 F.3d 50, 54 (1st Cir. 2005).

Scott also argues that his 120-month sentence, which was substantially higher than the calculated 63 to 78 month range, is unreasonable. First, he asserts that the sentence presumes an excessive degree of loss suffered by three victims—Marc Calabria, Dan Palay, and Paul Slavik. He points to the court's statements at sentencing that "Paul Slavik invested $180,000," that Calabria

sent a letter stating that Scott "swindled [him] and his family to the tune of $2.6 million," and that Palay believed that Scott "swindled me and my family out of hundreds of thousands of dollars . . . ." It is true that these figures (taken from a so-called "synopsis" of victim statements) do not track those listed on the government's "Loss/ Restitution Summary" spreadsheet identifying the known victim investors and their loss amounts, but any discrepancies here are harmless because the district court applied only the figures on the restitution spreadsheet and Scott stipulated to those figures at sentencing. *See United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009). Moreover, the court explained that a within-guidelines sentence for Scott was inadequate because he exploited his personal relationships with the victims over a long period of time; the court did not mention the loss amount for any particular victim.

Scott relatedly asserts that the district court did not adequately justify sentencing him above the high end of the calculated range. But the judge identified several factors that set Scott apart, including the extent to which he took advantage of the trust of his friends and neighbors, the lengthy period during which he continued to defraud people, and the large number of fraudulent transactions he perpetrated. *See United States v. Schlueter*, 634 F.3d 965, 967 (7th Cir. 2011) (affirming above-range sentence for defendant, a registered broker-dealer, who engaged in fraudulent investment scheme and bilked elderly clients out of more than $300,000); *United States v. Tockes*, 530 F.3d 628, 634 (7th Cir. 2008) (upholding above-range sentence for defendant who

fleeced elderly clients through his home construction business); *United States v. King*, 506 F.3d 532, 536-37 (7th Cir. 2007) (approving above-range sentence for defendant who "pocket[ed] funds set aside for victims of Hurricane Katrina"); *United States v. Leahy*, 464 F.3d 773, 792-93 (7th Cir. 2006) (affirming above-range sentence based on "the long-term duping of victims" and the defendant's "willingness to flout laws to gain his criminal objectives").

AFFIRMED.